237 Miss. 588 (1959)
115 So.2d 674
RATHRORNE, HAIR & RIDGEWAY BOX CO.
v.
GREEN.
No. 41254.
Supreme Court of Mississippi.
November 23, 1959.
Young, Daniel & Coker, Fred J. Lotterhos, Jr., Jackson, for appellants.
*590 Pyles & Tucker, Jackson, for appellee.
*591 GILLESPIE, J.
This is a workmen's compensation case. Claim was made based on two injuries, on January 16, 1956, and on August 7, 1956. Claimant testified that on January 16, 1956, he sustained an injury similar to and at the same place on his abdomen as the later injury on August 7, 1956. We shall make no further reference to the first injury for the following reasons: Claimant said in a written statement that he had no accident prior to August 7, 1956; claimant testified he paid no more attention to the January 16th accident after two days; claimant continued to work and made no claim therefor until after the accident of August 7, 1956; and the proof does not sustain causal connection with claimant's disability.
On August 7, 1956, and for several years prior thereto, appellant, herein called claimant, was employed by Rathborne, *592 Hair and Ridgeway Box Company, herein called employer. Up to the date stated, claimant was apparently in good health. On August 7, 1956, claimant sustained an injury in the course of his employment when a board was caused to be thrown by the saw claimant was operating and struck claimant in the abdomen. He promptly reported the accident. He was taken by the employer to the company physician, Dr. King, who then diagnosed claimant's condition as a contusion of the left abdomen and lower chest. Dr. King did not find any palpable mass at that time. Claimant was given some pills to relieve the pain and he returned to work during the rest of the day. On August 8, the pain grew worse, and the employer again took claimant to Dr. King, who, upon examination of claimant, found no palpable mass in his abdomen. Claimant again returned to work. On August 9, the employer's plant did not operate and claimant stayed at home and was sick all day. On August 10, claimant's pain had grown worse and he went to see Dr. King, who then, upon a more thorough examination, found a palpable mass in the left upper quadrant of claimant's abdomen. Dr. King promptly had claimant admitted to a hospital and laboratory tests were made, and on the night of August 10, Dr. King operated on claimant.
Dr. King had expected to find a ruptured spleen, but upon carrying out the surgery he found claimant's spleen was not ruptured and there was no evidence of internal hemmorrhage. The spleen was four or five times its normal size. There was a fibrous type exudate over the surface of the entire spleen and the general consistency of the spleen was the same throughout. A complete exploration of the entire abdominal cavity revealed no evidence of any further abnormalities. No corrective procedures were indicated or performed.
After the operation, Dr. S.H. McDonnieal, a specialist in internal medicine, was called into consultation with *593 Dr. King, and thereafter until the trial Dr. McDonnieal had claimant under his care.
Following the operation, extensive laboratory tests and studies were made by the physicians to determine why claimant had an enlarged spleen. The diagnosis of both Dr. King and Dr. McDonnieal was splenomegaly with syndrome of hypersplenism, cause unknown; the two physicians testified that there were more than thirty causes of this disease and they were of the opinion the condition had existed for a long time. Dr. McDonnieal thought it had been present possibly two or three years. Both physicians were of the opinion that trauma was not the cause. Dr. King was of the opinion the injury of August 7, 1956 temporarily aggravated the condition for a period of six to eight weeks. Dr. McDonnieal was of the opinion that the injury did not aggravate the spleen disease, but that the operation did, temporarily for a period of six to ten weeks. Both physicians were of the opinion that the effects of the injury of August 7 and the operation had subsided; that claimant needed further medical attention in the treatment of the disease and was disabled to some extent because of the disease. Both physicians were of the opinion that after the claimant recovered from the surgery, the course of the disease was not changed by the injury or by the surgery. The unqualified opinion of both physicians was to the effect that after claimant's post-operative recovery, claimant's need for medical attention and his partial disability was the result of the disease existing at the time of the injury and not the result of injury combined with the disease. In other words, the aggravation of the disease by the injury had ended and the course of the disease was thereafter unchanged by the injury or the surgery.
Claimant was discharged by Dr. King to return to work on October 23, 1956, after a satisfactory recovery from the operation. He returned to work on November 12, 1956, and continued to work until the hearing on December 16, 1956.
*594 The attorney-referee entered an order awarding compensation and medical benefits from August 10, 1956 to November 12, 1956, and held that subsequent to November 12, 1956, claimant suffered no residual disability, temporary or permanent, as a result of the accident of August 7, 1956. Upon review by the Workmen's Compensation Commission, the attorney-referee's order was affirmed.
Upon appeal to the circuit court, the Commission's order was reversed and the cause remanded to the Commission. The employer and its compensation insurance carrier appeal from the circuit court's order.
(Hn 1) The controversy involves compensation benefits subsequent to November 12, 1956, and the question is whether the evidence justified the Commission's finding that subsequent to November 12, 1956, claimant suffered no residual disability, temporary or permanent, as a result of the injury of August 7, 1956. Compensation and medical benefits were allowed to November 12, 1956, about which there is no dispute.
The rule in this State is that when a pre-existing disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. (Hn 2) A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
(Hn 3) The evidence in this case is that subsequent to claimant's recovery from the operation, which was before November 12, 1956, the partial disability of claimant was not causally related to the injury; the effects of the injury had subsided; and the course of the disease was not changed by the injury or the surgery. Two qualified physicians so testified. There is no medical proof to *595 the contrary. We think the Commission was fully justified in their findings.
The single point of controversy  whether claimant's partial disability and need for medical attention subsequent to November 12, 1956, was causally related to the injury of August 7, 1956  was an issue of fact. It was a medical problem about which a layman could only conjecture. We cannot uphold the circuit court's reversal of the Commission without assuming to resolve this complex medical question contrary to the uncontradicted opinion of the medical experts. In our opinion there is no basis in law or reason for reversal of the Commission under the proof in this case.
The judgment of the circuit court is reversed and the order of the Workmen's Compensation Commission is reinstated.
Reversed and order of Commission reinstated.
McGehee, C.J., and Roberds, Holmes and Ethridge, JJ., concur; Hall, Lee, Kyle and Arrington, JJ., dissent.
Arrington, J., Dissenting:
It is with deference that I dissent from the majority in this case.
It may be stated that the majority opinion correctly states the facts, but it may be noted that in this case it is undisputed, and the attorney-referee so found, which finding was approved by the Workmen's Compensation Commission, that the claimant on August 7, 1956, received an accidental injury in the course of his employment; that he was disabled on account of said injury from August 10, 1956 through November 12, 1956, and that subsequently he suffered no residual disability as a result of said accident; that the claimant was still suffering from an enlarged spleen, and is in need of further medical treatment.
It is undisputed that the claimant had never prior to his injury suffered any pain in his abdomen, and worked regularly for a number of year with the exception *596 of two days in January 1956, which time was lost as a result of being struck by a board from the ripsaw in the abdomen. It should be noted that the claimant suffered a severe blow in his abdomen on the morning of August 7, 1956, and that he was carried by his employer to the company's doctor, Dr. King, who examined him, gave him medicine, and returned him to work. The next day the pain grew worse and the employer again took the claimant to Dr. King, who examined him, and he again returned to work. The following day he did not work, but stayed at home. On August 10, claimant was steadily growing worse and went to Dr. King, who at this time examined him and found a mass in the upper part of claimant's abdomen. He was promptly admitted to the hospital and surgery was performed, which resulted in the finding of an enlarged spleen. Although we cannot enter the field of medicine, we think it is highly significant that Dr. King did not find the mass on August 7th or 8th, but did find it on the fourth day following the injury. To the lay mind, this clearly indicates that the swelling was the result of the injury.
Dr. King was definitely of the opinion that the injury was aggravated as the result of the trauma, or lick, and that the surgery added to his disability. Dr. McDonnieal, an internist, was called in and took over a week after claimant's injury, which was August 14, 1956, according to his report to the insurance carrier. Drs. King and McDonnieal agreed on the diagnosis, which was an enlarged spleen, cause unknown. They both stated that there were more than thirty causes for this disease. Dr. King testified that the only way a specific diagnosis could be made was to remove the spleen or a post-mortem examination, which would, of course, be too late to be of any benefit to the claimant.
Dr. McDonnieal testified that in his opinion the injury or trauma did not aggravate claimant's condition, but that surgery may have aggravated the condition. *597 His explanation was that he had had the enlarged spleen and that the trauma made the claimant aware of his condition and that the enlarged spleen was found accidentally.
I am of the opinion that the circuit court correctly reversed and remanded this case to the Commission. First, the attorney-referee and the Workmen's Compensation Commission held that the burden of proof was upon the claimant to establish by substantial evidence the causal connection between the accident and his disability at the present time. This is not the law. In the case of E.J. Hale v. General Box Manufacturing Co., et al., 108 So.2d 844, this Court said:
"The employer and its insurance carrier have sought to attribute the appellant's disability, or the major part of it, to causes for which they are not legally responsible. But the courts have generally held in compensation cases that, `Where injury by accident arising out of and in the course of employment is shown, the burden is on the employer to prove his defense that present disability is due to some other intervening cause or preexisting condition for which he is not responsible.' 100 C.J.S., Workmen's Compensation, Sec. 521a, p. 490, and cases cited; Serignese v. Air Reduction Sales Co., 1947, 135 N.J.L. 317, 51 A.2d 543; Ptak v. General Electric Co., 1951, 13 N.J. Super. 294, 80 A.2d 337; Texas Indemnity Ins. Co. v. Dean, Tex. Civ. App. 1934, 77 S.W.2d 748. We think the employer and its insurance carrier have failed to meet that burden in this case."
Further, it is undisputed that claimant is still suffering and that both doctors testified he was in need of further medical treatment, and at the time of the hearing was still being treated by Dr. McDonnieal. Claimant returned to work on November 12, 1956, the attorney-referee and Commission having found that he had suffered no residual disability as a result of the accident.
*598 The hearing was held on December 16, 1956. What has happened since, of course, we do not know. The circuit court's judgment was that the case be reversed and remanded to the Commission for appellants to pay the claimant compensation for the period August 10 through November 11, 1956, and for "such further time as he has lost or may lose from work on account of said injury as may be shown on a hearing." It is obvious that if the claimant has recovered, then there would be no future liability on appellants.
The majority opinion overlooks, or ignores, the well established rules which we have set out in many cases that the Workmen's Compensation Law should be given a broad and liberal construction, and doubtful cases should be resolved in favor of compensation. National Surety Corp. v. Kemp (1953), 217 Miss. 537, 64 So.2d 723, and 65 So.2d 840; King v. Westinghouse Electrical Corp. (1957), 92 So.2d 209, and in many others. In Deemer Lumber Co. v. Hamilton (1951), 211 Miss. 673, 52 So.2d 634, it was noted:
"Likewise, all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical constructions."
In Lindsey v. Ingalls Shipbuilding Corp. (1954), 219 Miss. 437, 68 So.2d 872, the Court quoted with approval from Williams Mfg. Co. v. Walker, 1943, 206 Ark. 392, 175 S.W.2d 380, as follows: "The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities  by putting form above substance." Cf. Central Electric Power Association, et al v. Hicks, 110 So.2d 351.
In Woodbury v. Arata Fruit Co., et al, 130 Pac.2d 870, the Court held: "The rule is well established in this jurisdiction that injury, resulting partly from accident *599 and partly from a pre-existing disease, is compensable if the accident aggravated or accelerated the ultimate result; and it is immaterial that the claimant would, even if the accident had not occurred, become totally disabled by reason of the disease." See authorities there cited.
We have held in many cases that for a claim to be compensable that the work must be only a contributing and not the sole cause of the injury. To hold in this case that the claimant has no residual disability from the injury, in my opinion, is not supported by substantial evidence. The judgment of the circuit court should have been affirmed.
Hall, Lee and Kyle, JJ., join in this dissent.